E-FILED
Monday, 09 July, 2007 02:29:29 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| CHASEN A. LEE )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Acting )<br>Commissioner of Social Security )<br>Administration )<br>)<br>Defendant. ) | Case No. 06-1147 |

**ORDER**

This matter is now before the Court on Plaintiff Chasen A. Lee's ("Lee") Motion for Summary Judgment and the Defendant Commissioner's Motion to Affirm. For the reasons set forth below, Lee's Motion for Summary Judgment [#12] is DENIED, and the Commissioner's Motion to Affirm [#13] is GRANTED.

**Background**

Lee was born on February 17, 1971. (R394) He is 5'10'' tall and weighs approximately 160 pounds. (R425) Lee is not married and has five children. (R425) He has completed the tenth grade. (R427) In the past, Lee has worked as a telemarketer, a cook, a printer laborer, and a butcher's helper. (R102). He was last employed as day laborer in early 2004. (R428) He held most of his past work positions for only very short periods of time (R102, 428).

On January 29, 2003, Lee filed his current applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging that he became disabled on

September 19, 1999, due to a shattered right heel bone with resulting chronic pain in his feet and back. (R66)  His applications were denied initially and on reconsideration. (R31, 38)  Lee requested a hearing before an administrative law judge ("ALJ"). (R42)  That hearing was held before ALJ Barbara J. Welsch on January 26, 2006, at which time Lee, his mother, Irma Lee, and vocational expert ("VE") Bob Hammond appeared and gave testimony. (R421)  At the hearing, Lee explicitly waived his right to counsel after the ALJ informed him that a representative could assist in the presentation of his case. (R423-24).  Lee also proceeds pro se in this appeal.

Lee testified that pain in his back and legs prevents him from standing for long periods of time. (R429)  He also testified that he received a head injury during an assault, and tested positive for cocaine and marijuana at the time of the assault. (R429-30)   Lee denied any current use of street drugs. (R430)  He sometimes has trouble remembering things. (R431)  He takes medication to prevent seizures and to help him sleep. (R429)

Lee lives with his mother and one of his daughters. (R425)  Lee testified that he wakes up at 7:30 in the morning. (R431)  He takes out the garbage, but does not do any other housework. Id.  He occasionally fixes meals for himself, but does not grocery shop. (R341-32)  He bathes and dresses himself. (R433)  Lee used to work on cars, but does not do so anymore, and does not practice any hobbies or interests. Id.  He occasionally watches television. (R432)

Lee's mother, Irma Lee, also testified at the hearing regarding her son's condition.  She stated that Chasen is often confused about the date, time, places, and people, and is generally forgetful. (R435-36, R440)  She also described Chasen as having a learning disability. (R436)  She testified that she did not know if Chasen was currently using any street drugs, and also testified that Chasen's friends pick him one to two times per week to take him places, such as car shows. (R437-38)

2

On September 19, 1999, Lee was injured at work after he fell from a ladder. (R208) Lee fractured his right heel. (R281) While Lee also complained of back pain, diagnostic tests were negative for any back injury. Id. On September 30, 1999, Richard Driessnack, M.D., performed surgery on Lee's foot. (R208) Lee was discharged on October 1. Id.

A November 10, 1999, post-operative exam revealed that Lee's flexion of his foot was good, but inversion and eversion were limited. (R272) After another post-operative exam, on December 22, 1999, Dr. Driessnack reported that "Lee is coming along quite well given the severity of his fracture." (R262) Lee reported minimal pain and was able to walk with a cane. Id. Dr. Driessnack recommended an aggressive physical therapy regimen. Id.

Lee began physical therapy in January 2000. On January 18, 2000, he reported to his physical therapist that he was experiencing a slight increase in discomfort and requested pain medication. (R268) In February 2000, his therapist noted that he was walking without a cane or other assistive device, though he also complained of pain when walking on uneven surfaces (R265)

On March 10, 2000, Lee saw Dr. Driessnack for a follow-up exam (R256). While Lee did complain of pain in his heel, Dr. Driessnack cleared Lee to return to work, with the restriction that he can only perform seated, light-duty tasks. Id. On June 2, 2000, x-rays of Lee's foot confirmed "solid healing." (R255) With custom insoles for his shoes, Lee was able to walk without a cane. Id. Dr. Driessnack also reported that Lee will have degenerative changes and may need another surgery, a subtalar arthorodesis, if he were to experience disabling pain which would interfere with activity on a regular basis. Id. The record does not contain any information on further deterioration of or surgery on Lee's heel. On June 28, 2000, Delano Zimmerman, M.D., a state agency physician, reviewed Lee's medical files. (R282) Dr.

3

Zimmerman generally agreed with Dr. Dreissnack's prognosis, and concluded that Lee could lift 50 pounds occasionally and 25 pounds frequently; stand or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. (R285-292)

On April 29, 2003, Stanley Rabinowitz, M.D., examined Lee at the request of the state agency for joint and back pain. (R299-302) Lee's chief complaints were joint and back pain, which he controlled with over-the-counter medication. (R299) Dr. Rabinowitz noted that while Lee complained of pain in his foot, there was no evidence of "nonunion or steomyelitis" after the surgery. Id. Dr. Rabinowitz also noted that Lee was able to walk with the use of an assistive device, though he did have a mild, antalgic gait, and that Lee had normal range of motion in his joints and spine, and had normal reflexes. (R299-300) Lee's neurological exam was normal. (R301)

Another state agency physician, Sandra A. Bilinsky, M.D., reviewed Lee's medical records in May 2003 and concluded that he could lift or carry 50 pounds occasionally, 25 pounds frequently, could stand or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (R322-29) State physician E.C. Bone, M.D., affirmed Dr. Bilinsky's assessment in October 2003. (R329)

In August 2003, Lee fractured his right toe after a bicycle accident. (R313) He was placed in a cast, and on September 15, 2003, treating physician Nirain A. D'Souza, M.D., estimated that Lee would be back to full weight-bearing status on November 1, 2003. (R316)

On July 7, 2005, Plaintiff was hospitalized after he was a victim of an assault. (R336) He suffered lacerations, epidural hematoma, and a skull fracture from a blunt head trauma. (R338) He also tested positive for cocaine and cannabis at the time he was admitted to the hospital. (R352) Lee received speech and physical therapy following the head injury. (R357)

4

While in rehabilitation, Lee suffered some seizures, for which he was prescribed Dilantin. (R360-61)  Lee was referred to Jianming Dong, M.D., in August of 2005 for treatment of his seizures.  (R360)  On October 31, 2005, Dr. Dong noted that Lee "may have developed localization related epilepsy secondary to traumatic brain injury."  (R382)  Dong further noted, however, that Lee's condition was well controlled with Dilantin and Lee had denied suffering any seizures since starting the medication.  Id.  Dr. Dong described Lee's condition as "stable and improved," and recommended that Lee discontinue speech therapy.  (R383)

Lee saw Dr. Dong again in January 2006.  An EEG and brain MRI scan produced normal results.  Lee complained of dizziness, difficulties concentrating, mood swings, and forgetfulness since his head injury, and told Dr. Dong that he was "asking for possible disability."  (R390)  After examination, Dr. Dong noted that Lee was alert, oriented, and able to walk without ataxia.  Id.  Dr. Dong reported that Lee had no focal neurological deficit, that Lee's seizures were well controlled, and that Lee could take Motrin for headaches.  Id.  Dr. Dong concluded that he did not feel that Lee met the criteria for disability coverage.  (R390-91)

At Lee's hearing, the ALJ asked the VE to consider a hypothetical individual with the following limitations:

> [C]onsider an individual who's 34, looks like soon to be 35 years old, tenth grade education, let's assume no past relevant work for the purposes of this hypothetical.  An individual who's limited to light and sedentary work that does not require climbing or working at unprotected heights and would be limited to jobs which were routine and repetitive in nature, one and two-step work tasks.

(R442)  The ALJ asked VE Hammond to provide some examples of jobs that the hypothetical person could complete.  Id.  VE Hammond testified that such a person could perform the light jobs of laundry worker and cleaner/housekeeper, and the sedentary job of polisher.  (R442-46)  VE Hammond also testified that were thousands of these positions in Illinois.  Id.

On April 13, 2006, the ALJ issued her decision. (R23) The ALJ found that Lee suffers from severe mental and physical impairments based on the requirements in Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c). (R22) The ALJ determined, however, that Lee does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. Id. After considering the medical evidence in the record and relevant credibility factors, the ALJ found Lee's alleged functional limitations to be not credible. Id.

The ALJ determined that Lee, as a younger individual with no past relevant work and a limited education, possesses a residual functional capacity to perform a significant range of light work. (R22-23) Because Lee's past work was usually "short term," and it would be difficult to determine which jobs were actually "past relevant work" for purposes of the five-step evaluation set out below, the ALJ gave Lee "the benefit of the doubt" at step four of her analysis. (R21) The ALJ determined that while Lee's limitations prevent him from performing the full range of "light work," there are still a significant number of jobs in the national economy that he could perform. (R23) Therefore, the ALJ concluded that Lee was not under a disability as defined in the Social Security Act ("the Act"). Id.

Lee submitted a Request for Review of Hearing Decision. (R11) On August 1, 2006, the Appeals Council declined review of Lee's claim, and the ALJ's decision became the final decision of the Commissioner. (R7) This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

**Discussion**

In order to be entitled to SSI and DIB, a plaintiff must show that his or her inability to work is medical in nature. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966.

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed?; (2) is the plaintiff's impairment "severe?" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments? (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation?; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988 (1986).

Lee's pro se Motion for Summary Judgment is one brief paragraph in which he puts forth the blanket argument that "all information [in the ALJ's opinion] is contrary to law," and "the statute and regulation in my case under the commissioner is allegedly erred." He then asks that the Court refer to seven separate excerpts in the record. As made clear in Local Rule 8.1(D), which was mailed sent to Lee on November 27, 2006, Lee bears the burden of "stat[ing] *with particularity* which findings of the Commission are contrary to law. . . . Arguing generally, 'the decision of the Commissioner is not supported by substantial evidence' is <u>not</u> sufficient to meet

this rule." Lee's scant and conclusory pleading surely does not satisfy this burden, even when read liberally, as pro se pleadings are to be construed. Lehn v. Holmes, 364 F.3d 862, 872 (7th Cir. 2004). This Court will nonetheless review the administrative record and the excerpts cited by Lee to ensure that the Commissioner's decision is in fact supported by substantial evidence.

Here, the ALJ's determination that Lee could perform a range of light work is supported by substantial evidence in the record. While Lee undisputedly suffered multiple serious injuries during his alleged period of coverage, each of his doctors and therapists reported regular healing and recovery. The state agency medical consultants all concluded that Lee could lift 25 pounds regularly and stand and walk 6 to 8 hours in an 8-hour work day, and Lee's treating physician indicated that he could perform at least sit down work. Lee's complaints of foot pain are undercut by his ability to complete a variety of daily activities and the fact that he does not demand any prescribed pain medications for his foot. The ALJ further noted that Lee did work for brief periods of time when he alleged he was disabled.

Similarly, Lee's complaints of ongoing back pain, seizures, headaches, and dizziness are not supported by the medical evidence. Lee does not take pain medication and reported no seizures once being on Dilantin. There is also no indication that he receives ongoing treatment for any of these conditions, and Lee's treating physician affirmatively opined that Lee is not disabled. Essentially, the ALJ determined that Lee's subjective complaints were not credible, and in general, credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

To the extent the evidence in the record established credible work-related limitations, the ALJ incorporated those limitations when she described a hypothetical person to VE Hammond who could only perform light and sedentary work.  VE Hammond testified that a person with Lee's demographic characteristics and physical limitations could perform more than 15,000 jobs in the regional economy.  Because the ALJ's hypothetical question contained the credible limitations reasonably supported by the record, she reasonably relied on VE Hammond's decision in making her step-four decision.  Accordingly, the hypothetical question was proper, and the VE's testimony constitutes substantial evidence for the ALJ's conclusions.  See Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003).

As stated above, Lee's Motion for Summary Judgment does not enumerate which ALJ findings are not properly supported, but rather lists certain pages from the record.   However, none of these pages show that the ALJ's decision was not supported by substantial evidence.  For example, the first excerpt cited by Lee spans pages 161-65 and is a "Reconsideration Disability Report."  The report was completed by Lee and states that he was a premature baby and has a learning disability.  However, the ALJ fully addressed Lee's complaints concerning his learning disability, finding that he had not demonstrated "more than mild or slight limitations in daily activities and social functioning due to his mental impairments."  (R21)  Moreover, this form was completed by Lee himself, not a medical source, and as addressed above, the ALJ did not improperly discount Lee's credibility.

The second excerpt cited by Lee is spans pages 188-200 and is an OSF Saint Francis Medical Center emergency department report regarding treatment given to Lee after he passed out at a Barber Shop.  The report indicates that Lee had given plasma the day before the incident, and felt well and wished to leave the hospital almost immediately after being given intravenous

fluids. (R192-93) Even if this report were in some way relevant to Lee's complaints regarding his physical limitations, it would be of negligible weight to the ALJ's considerations, as this incident occurred prior to Plaintiff's alleged onset date, September 1999.

Lee also cites pages 295-298, which is an OSF Saint Francis medical report regarding Lee's May 2000 visit to the hospital for nasal and chest congestion. Lee was given medication and an inhaler. (R296) The record contained no further evidence that the medication was ineffective or that Lee suffered continuing physical limitations due to respiratory problems.

The remaining excerpts cited by Lee – pages 201-204; 205-225; 360-363; and 380-387 – all pertain to Lee's injuries from his fall in September 1999 and his assault in July 2005. As discussed above, the ALJ considered this evidence in reaching her conclusion that Lee could perform light duty work, and nothing in those pages dictates a contrary result or indicates that the ALJ's decision was not supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, Lee's Motion for Summary Judgment [#12] is DENIED, and the Commissioner's Motion to Affirm [#13] is GRANTED.

ENTERED this 9th of July, 2007.

                                                              s/Michael M. Mihm  
                                                          Michael M. Mihm  
                                                          United States District Judge